**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| BRUCE BLACK, | Case No. 1:13-cv-824 |
| Plaintiff, | Spiegel, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Bruce Black filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's finding should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In October 2009, Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits, alleging disability beginning back on June 1, 1979, on the basis of bipolar disorder, PTSD, obsessive compulsive disorder, and/or knee problems. (Doc. 5 at 2; Tr. 199, 229). However, at the hearing, Plaintiff expressly disavowed any physical limitations. (Tr. 59). Plaintiff's applications were denied initially and on reconsideration, and he timely requested an evidentiary hearing before an administrative law judge ("ALJ"). On November 7, 2011, ALJ Lorenzo Level presided over a hearing conducted via video; the ALJ presided from

Chicago, while Plaintiff and his representative appeared in Cincinnati.[1] A vocational expert testified by telephone.

On March 30, 2012, ALJ Level issued an unfavorable written decision. The ALJ determined that Plaintiff had continued to work at a variety of jobs after his claimed disability onset date in 1979, and performed those jobs at substantial gainful activity ("SGA") levels. A break in SGA activity occurred when Plaintiff was incarcerated from 1993 to 2003, but in 2004, he resumed work as a sandwich maker in a deli. (Tr. 16). After that, he worked various jobs as an industrial cleaner, and a few jobs at fast food restaurants. (Tr. 16). At the hearing Plaintiff's representative stated that "he actually was working full time up to sometime in 2008. I believe it was maybe October. So we might need to amend the onset date there." (Tr. 63). Plaintiff's DIB application reflects a presumed last day of SGA as 10/1/2008. (Tr. 196). However, Plaintiff never formally amended his alleged onset date.

Plaintiff, who was 48 years old at the time of the hearing and 49 at the time of the ALJ's decision, was found to have the following severe impairments: "bipolar disorder, PTSD, borderline intellectual functioning, and obsessive-compulsive disorder." (Tr. 17). In addition, the ALJ found a non-severe impairment of polysubstance dependence (in reported partial remission). However, he held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 17). Instead, he found that

---

[1] Sara Vickers is listed in the hearing transcript as Plaintiff's "attorney," but previously has been identified to this Court as a paralegal at O'Connor, Acciani & Levy Co. (*See also* Tr. 1171). Ms. Vickers was appointed as a non-attorney representative, jointly representing Plaintiff with attorney Henry Acciani of the same firm. (Tr. 113). Mr. Acciani represents Plaintiff in this proceeding.

throughout the claimed period of disability, Plaintiff has retained the residual functional capacity ("RFC") to perform work at all exertional levels, but with the following non-exertional limitations:

> He is limited to understanding, remembering, and carrying out simple instructions and performing simple tasks. He can have occasional interaction with supervisors, coworkers, and the public.

(Tr. 19).

Plaintiff has a tenth grade education. Given Plaintiff's age, education, experience, and RFC, the vocational expert testified, and the ALJ found, that Plaintiff could still perform past relevant work as an industrial cleaner. (Tr. 23). The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

On appeal to this Court, Plaintiff argues that the ALJ erred by failing to give proper weight to treating physicians who opined that he had more severe mental limitations. Additionally, Plaintiff asserts that the Appeals Council erred by failing to consider "new and material" evidence. For the reasons stated, I find no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to

4

determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Errors

#### 1. Medical Opinion Evidence

Plaintiff's first assertion of error claims that the ALJ's "RFC is not supported by the record." (Doc. 5 at 10). More specifically, Plaintiff asserts that the ALJ failed to give controlling weight to the opinions of two treating psychiatrists, Dr. Shannon Stanford and Dr. Rukseniene. Both psychiatrists treated Plaintiff at the Center Point Health Clinic, where Plaintiff began treating in the fall of 2009. (*See* Tr. 1055, new evaluation dated November 24, 2009, based referral date of 8/21/09).

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

5

*Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). If an ALJ does not give controlling weight to a treating physician's opinion, he or she must articulate the weight given to the opinion, and provide "good reasons" for that decision.

> If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.

*Id.*, 581 F.3d at 406 (additional citations omitted). The opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants. *See* 20 C.F.R.§1527(c)(1); *see also Gayheart v. Com'r*, 710 F.3d 365, 375-376 (6th Cir. 2013). Here, the ALJ gave "little weight" to the functional assessment opinions of treating psychiatrist Dr. Stanford, and only "some weight" to the opinions of a second treating psychiatrist.

### a. Treating Physician Sharon Stanford, M.D.

Dr. Stanford completed a "Mental Impairment Questionnaire" on May 17, 2011 in which she diagnosed Plaintiff with bipolar disorder and OCD, and assessed his global assessment of functioning ("GAF") score at 45. (Tr. 1172-1177). She opined that Plaintiff has moderate limitations in activities of daily living, marked limitations in social functioning, marked limitations in concentration, persistence, and pace, and three episodes of decompensation in the prior year. (Tr. 1175). In addition, she rated Plaintiff

as "unable to meet competitive standards" in nine distinct work-related areas, "seriously limited but not precluded" in eight additional areas, and "limited but satisfactory" in eight areas. (Tr. 1174-1175). Had the ALJ accepted her assessment, Plaintiff would have had much greater mental RFC limitations, likely leading to finding of disability. However, the ALJ gave her opinions "little weight," for the following reasons:

> These degrees of limitation in mental health domains are not supported by the objective medical evidence of record. First, there is very little treatment evidence in the record. Second, the treatment evidence, outlined above, shows that the claimant indeed has significant symptoms of his impairments, but also that his impairments were capable of being stabilized on medications if the claimant was compliant.
>
> The GAF score of 45 assigned by Dr. Stanford, for similar reasons, is also given little weight. In addition to the record demonstrating a much higher level of functioning than the score indicated (including other GAF scores in the record that were higher), the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (2000). Thus, although GAF scores can be helpful…, they are considered a snapshot of functioning at the time of examination not determinative of overall disability.

(Tr. 22).

Plaintiff challenges the ALJ's failure to give Dr. Stanford's RFC assessment "controlling weight." He argues that, contrary to the ALJ's analysis, Dr. Stanford's RFC opinions are both consistent with other substantial evidence of record and are well-supported. Plaintiff asserts that "the ALJ has no grounds for rejecting…[the treating physician] opinions other than that their RFC restrictions don't match his own." (Doc. 5 at 12). The undersigned disagrees, and finds no reversible error.

Before addressing the issue of whether the ALJ provided "good reasons" for giving Dr. Stanford's opinions "little weight," it is worth noting that Plaintiff claims error only with respect to the determination of his mental RFC at Step 4 of the sequential

analysis. Plaintiff articulates <u>no challenge at all</u> to the ALJ's determination that he did not meet or equal any Listing at Step 3. This is despite the fact that, as the Defendant points out, Dr. Stanford's assessment is relevant to the ALJ's Step 3 analysis, insofar as the form directly addresses the four criteria listed in "Paragraph B" for most mental health Listings.[2]

In order to meet or equal Listings 12.04, 12.05 or 12.06 (the three listings expressly considered by the ALJ), Plaintiff was required to satisfy both Part A and Part B of the relevant Listing. The proof required to satisfy Part A varies based on the asserted listing. *See, e.g.* Listing 12.04A (requiring medically documented persistence of syndrome with at least four characteristics). Part B, however, is essentially the same for each of the mental health listings and requires a showing that Plaintiff's impairments resulted in at least two "marked" areas of restriction in: (1) activities of daily living, (2) maintaining social functioning, or (3) maintaining concentration, persistence or pace. Alternatively, Plaintiff was required to show one "marked" impairment in the listed areas, plus repeated episodes of decompensation of extended duration (lasting for at least two weeks). (Tr. 17).

The difference between a Step 3 challenge and the articulated challenge by Plaintiff to the ALJ's RFC findings at Step 4 is not always significant, because the burden of proof remains with Plaintiff at both Steps. *See Her v. Com'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)(clarifying that the burden of proving disability remains with the Social Security claimant at Steps 1 through 4). Arguably, Plaintiff's Step 3 burden is the most stringent, to the extent that the Sixth Circuit has made clear that a plaintiff

---

[2]The same criteria are listed in paragraph D of Listing 12.05 for mental retardation.

must offer proof sufficient to satisfy each individual requirement of the listed impairment. It is insufficient that a claimant "comes close," and a general argument that Plaintiff meets or equals some unidentified listing will not suffice. *See e.g., Sullivan v. Zebley*, 493 U.S. 521 (1990*); Elam ex rel. Golay v. Com'r of Soc. Sec.*, 238 F.3d 124, 125 (6th Cir. 2003). To reiterate, here Plaintiff's Statement of Errors does not contest the ALJ's conclusion that Plaintiff does not meet or equal Listings 12.04, 12.05, or 12.06, but asserts only that the ALJ erred at Step 4. Regardless, at both sequential Steps 3 and 4, the ALJ must provide "good reasons" for his rejection of treating physician opinions, and the ALJ's RFC findings must be supported by substantial evidence.

The undersigned construes Plaintiff's argument as challenging both the reasons articulated by the ALJ for rejecting Dr. Stanford's opinions, and the ALJ's mental RFC findings. Plaintiff first asserts that the ALJ's comment that Plaintiff's mental health treatment since 2009 has been "sporadic" (Tr. 21) is contrary to the evidence of record, since Plaintiff has been treating at Center Point since late November 2009, and was seen in the psychiatric emergency services unit ("PES") for anxiety and paranoia in February and October 2009. (Tr. 970, 983). However, the record as a whole supports the ALJ's assessment of Plaintiff's treatment as inconsistent and not continuous, beginning in 1979 through the date of the ALJ's decision. The ALJ noted that there was no strong evidence of a debilitating mental impairment during Plaintiff's prison stay from 1993-2003, or of continuous treatment for the same. (Tr. 20). It was not until 2009 that Plaintiff started any routine treatment for his psychological symptoms.

As Defendant points out, even Dr. Stanford's records reflect that Plaintiff frequently failed to show up for his appointments at Center Point. The ALJ specifically found that Plaintiff's "impairments were capable of being stabilized on medications if

9

[he] was compliant." (Tr. 22). Plaintiff does not dispute that finding, nor did he argue to the ALJ (or to this Court) that any non-compliance was justified. *See generally*, 20 C.F.R. §404.1530 and §416.930 (providing that a person will not be found disabled if he does not follow prescribed treatment without a good reason); SSR 82-59 (same). In June of 2010, Plaintiff reported that he had no symptoms and was able to function as long as he was compliant with his medications. (Tr. 21, citing Tr. 1311). In August, 2010, Plaintiff stated that he was applying for a part-time job. (*Id.* citing Tr. 1303, case worker's note that he "asked if the client had ever thought about just working rather than trying to get disability"). In March 2011, shortly before the date of Dr. Stanford's assessment, Plaintiff reported that he had been off medications "for months." (Tr. 21, citing Tr. 1205). In August 2011, three months after Dr. Stanford's assessment, he again reported being out of his medications and expressed an intent to obtain them again because they helped him. (Tr. 21 citing Tr. 1197).

Plaintiff primarily argues that the ALJ should have accepted Dr. Stanford's opinions that he has "marked" impairments in two functional areas, and that he has had multiple episodes of decompensation. First, Plaintiff suggests that the ALJ should have found "marked" limitations in his activities of daily living since "Dr. Stanford noted marked limitations in this area." (Doc. 5 at 12). However, that is an incorrect statement of the record. Dr. Stanford found only "moderate" limitations in that area, (Tr. 1175), whereas the ALJ found only "mild" limitations. In any event, the undersigned finds substantial evidence to support the ALJ's determination. The record reflects that Plaintiff can prepare simple meals, clean, do laundry, iron clothes, and independently take care of dressing and bathing. While Plaintiff protests that his daily activities "do not equate to an ability to perform" full-time work, (Doc. 5 at 12, citations omitted), the ALJ

10

did not improperly equate Plaintiff's daily activities to full-time work. Instead, the ALJ appropriately evaluated those activities in the context of the B criteria, and in evaluating Plaintiff's credibility.

Plaintiff additionally argues that the ALJ should have accepted Dr. Stanford's opinions that he has "marked" impairment in social functioning, and that his paranoid thoughts, compulsions and panic attacks limit his ability to leave his home and that he would have severe problems completing tasks. (Tr. 1172, 1175). Again, the undersigned finds no error in the ALJ's rejection of those opinions or his determination that Plaintiff has only "moderate" impairments in this area. In the consultative exam, Plaintiff described his symptoms and interactions with others as somewhat improved with medications, and the examiner noted that he was friendly and fairly disclosing. (Tr. 18). Plaintiff testified that he recently began attending church regularly with a friend, and the record reflects that he previously lived with a girlfriend. Plaintiff testified that he tries to limit going to the grocery store to times when it is less crowded, but that testimony is not inconsistent with the ALJ's finding of "moderate" limitations.

Plaintiff maintains that Dr. Stanford's related RFC opinions that Plaintiff would be unable to meet competitive standards needed to interact with co-workers and the general public are consistent with Plaintiff's own testimony and prior reports concerning his allegedly "marked" impairment in social functioning. However, the ALJ was not required to wholly accept Plaintiff's testimony, and specifically found that Plaintiff's complaints of disabling symptoms to be "not credible." (Tr. 20). Plaintiff does not dispute that finding.

Plaintiff complains that the ALJ also should have accepted Dr. Stanford's opinion that he has "marked" restrictions in his ability to maintain concentration, persistence or

11

pace, (Tr. 1175), rather than finding only "moderate" limitations. He cites treatment notes that are "consistent" with as more severe impairment than determined by the ALJ, as well as his hearing testimony. Again, the undersigned finds no error. The fact that evidence may exist to support an alternate finding does not mean that substantial evidence is lacking to support the ALJ's finding. The ALJ's credibility determination is not at issue, and as previously discussed, the evidence of record supports his determination that Plaintiff's level of impairment was no more than "moderate" when Plaintiff was compliant with treatment.

Last, Plaintiff argues that Dr. Stanford was correct in her opinion that he has had numerous episodes of decompensation, because she noted several "months of decreased function from August 2010 to March of 2011," (Doc. 5 at 13-14), and he lives in a highly supportive living arrangement. (Tr. 1176). However, Plaintiff fails to cite to any portion of his medical record that corroborate specific and repeated episodes of decompensation within the referenced time period, in which Plaintiff was psychiatrically hospitalized for more than two weeks, or otherwise met the requisite criteria.

### b. Treating Physician Dr. Indre Rukseniene, M.D.

Plaintiff more briefly argues that the ALJ erred in rejecting the opinions of Dr. Indre Rukseniene, who was a second treating psychiatrist at Center Point Health Clinic. On January 5, 2010, Dr. Rukseniene completed a medical source statement stating that Plaintiff had bipolar affective disorder, manic, severe, and opined that he had limitations in concentration, mood swings, and high frustration due to not being able to finish things that were started and learn new concepts. Dr. Rukseniene also opined that he had difficulty being around others. However, she noted that "treatment somewhat helps [Plaintiff's] symptoms." (Tr. 994). The ALJ gave her opinion "some weight in

12

determining [Plaintiff's] residual functional capacity." (Tr. 22). Dr. Rukseniene's narrative Statement does not contain any opinions on specific functional limitations, and is arguably consistent with the ALJ's mental RFC findings. Therefore, I find no error.

### 2. The Lack of Any New and Material Evidence

Plaintiff's second assertion of error is similarly unpersuasive. He argues that the Appeals Council erred by failing to consider "new and material" evidence from Jewish Hospital that relate to Plaintiff's physical impairments. Plaintiff does not specifically identify which evidence should have been considered, but Defendant and this Court assume that it is the records of treatment that Plaintiff received in late May 2011 through early August 2011 for dizziness, a bowel obstruction, and lower left leg swelling. (Tr. 1363-1426). While the Plaintiff's argument is somewhat vague, Defendant correctly points out that this Court may not consider the evidence for purposes of determining whether the ALJ's decision was supported by substantial evidence. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

By contrast, the undersigned may consider the evidence for purposes of a sentence six remand to the extent that Plaintiff can prove that the evidence is new and material to his claim, and shows good cause for his failure to present the evidence to the ALJ. On the record presented, it is clear that Plaintiff can make no such showing.

The following exchange occurred at the evidentiary hearing before the ALJ is sufficient to show that the evidence is not material:

ALJ: So are you alleging any physical limitations?

ATTY: No.

(Tr. 59).

Plaintiff confirmed in his testimony that he does not claim any physical limitations, other than temporary restrictions imposed during recovery periods for acute injuries or operations. (Tr. 61-62). The ALJ specifically asked whether Plaintiff had any "other limitations," to which Plaintiff testified: "No physical or – no, none that I know of." (Tr. 62). While it is true that the ALJ stated that he would like to see Plaintiff's records from a then-recent hospitalization, (Tr. 62), it is also clear from Plaintiff's testimony and the statements of his representative that those records were not relevant to his claim of mental disability.

Despite that lack of relevance, the ALJ held the record open for a period of time before denying request for a further extension of time in which to submit additional records[3] on January 18, 2012. Plaintiff now briefly argues that the "new" records could corroborate testimony regarding physical problems with his knees, and therefore warrant remand. As mentioned, however, while Plaintiff testified that he had experienced swelling in his knee and leg and was told to rest and/or "not really lift anything over 10 pounds," he also explained that those restrictions were "just at the time when I was in the hospital. I'm sure it probably was just, maybe, just for the healing process of the operations I've had." (Tr. 60-61). And again, both Plaintiff and his representative unequivocally denied any permanent physical limitations in response to a direct inquiry from the ALJ. (Tr. 59, 62). Last, Plaintiff fails to show a "reasonable probability" that the ALJ would have come to a different decision if presented with the evidence, and makes no effort at all to show good cause for his failure to present the

---

[3]Although the hearing was held on November 7, 2011, the ALJ did not issue his decision until March 30, 2012, more than four months later. Plaintiff does not state the precise date that he obtained the records.

14

evidence to the ALJ in a more timely fashion.  Thus, remand under sentence six is not recommended.

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRUCE BLACK,                                                                 Case No. 1:13-cv-824

        Plaintiff,                                                        Spiegel, J.
                                                                             Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).